No. 14,282.

GUADALUPE MAIN DITCH COMPANY ET AL. *v.* MANASSA LAND
AND IRRIGATION COMPANY.
(91 P. [2d] 497)

Decided May 29, 1939.

Mr. RALPH L. CARR, Mr. JEAN S. BREITENSTEIN, Mr.
JOHN H. SHIPPEY, for plaintiffs in error.

Mr. GEORGE M. CORLETT, Mr. J. H. THOMAS, Mr. CHARLES
R. CORLETT, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE parties to this litigation are here in reverse order
of their appearance in the district court, and for conven-
ience will be designated as plaintiff and defendants re-
spectively. Plaintiff, the Manassa Land and Irrigation
company, brought an action in the district court to en-
join defendant, the Guadalupe Main Ditch Company, a
corporation and mutual ditch company, and V. H. Mann
and James H. Holman, the president and secretary of

said ditch company, from selling or attempting to sell any of the shares of the stock of the defendant company held by plaintiff company for the nonpayment of any assessments or charges and from levying, collecting and attempting to collect any such assessments or charges on account of the shares of stock of the defendant company owned by the plaintiff company. Judgment was for plaintiff and defendant seeks a reversal.

The assignments of error are numerous. Certain thereof relate to the admission and rejection of evidence, none of which we think has merit. The others may be included under the general assignment that the findings and judgment of the court are not supported by the evidence.

The defendant company is a mutual ditch company owning decreed priority No. 1 to the waters of the Conejos River. Its total issue of stock was 100 shares of which the plaintiff company owned forty-two and two-thirds shares which it is not disputed represented 29.79 second feet of the total waters to which the defendant company was entitled under its decreed priority. Of the other fifty-seven and one-third shares, 38 were owned by the Romero Irrigation Company and the remainder by various individuals.

In 1926 the Manassa company, with the consent of the Guadalupe company, procured a decree changing the point of diversion of the 29.79 second feet of water to which it, by virtue of its stock ownership in the Guadalupe company, was entitled. At about the time of this change some assessments were levied on all the stock of the Guadalupe company. It is asserted by plaintiff that this was for the purpose of placing the ditch in good repair so as to more efficiently carry the diminished stream remaining. It claims also that it had an agreement with the Guadalupe company that upon payment of a large part of the assessments required so to repair the ditch that the latter company would not in the future look to the Manassa company for assessments further to main-

tain a ditch from which it derived no benefit. The trial court was of the opinion that probably there was such a contract between the two companies at the time the decree was entered granting the change of point of diversion, but was further of the opinion, and we think rightly so, that the evidence as to its terms was insufficient to authorize a finding as to what they were. As the trial court pointed out in its findings, the subsequent conduct of the parties indicated that there had been an understanding or agreement of some nature.

At the annual meeting of the Guadalupe company February 24, 1928, a representative of the Manassa company presented a request that the latter be given a quitclaim deed for the water it was diverting and that it be permitted to withdraw from the Guadalupe company. This request, as appears from the minutes, was laid on the table for three weeks and was to be considered at a proposed adjourned meeting which apparently was never held. The next annual meeting was December 20, 1929. There being a balance in the treasury, no assessments were levied. Apparently the matter of the request of the Manassa company was considered, for the minutes recite that there was no one present who knew how such withdrawal could be effected. It was left to Mr. Felt, one of the members of the board of the Guadalupe company to consult attorneys in Denver about the matter. At the next annual meeting held December 19, 1930, eighty-one shares were represented, of which forty-two were owned by the Manassa company. A resolution to levy an assessment of $4.00 a share for the ensuing year was offered. Mr. Haynie, the representative of the Manassa stock which controlled the meeting, refused to vote for the assessment claiming that the Manassa company was no longer obligated to pay assessments since it had ceased to use the Guadalupe ditch. After some discussion there was a "tentative verbal agreement arrived at" as recited in the minutes, between Mr. Mueller, who offered the resolution, Mr. Felt and Mr. Haynie, to the effect that

within one year some satisfactory and equitable arrangement would be worked out whereby the Manassa company might withdraw. Mr. Haynie, with this assurance, withdrew the opposition of the Manassa company and the resolution was passed unanimously. The minutes of the annual meeting held December 18, 1930, disclose that the matter was again discussed and that Mr. Felt reported that he had been unable to learn just how the separation could be accomplished. The secretary reported that the Manassa company had refused to pay its assessment. At the next annual meeting, December 29, 1932, the Manassa company was represented by Haynie, Jensen and Brady and it is shown by the minutes that they answered the roll call for the purpose of providing a quorum to organize the meeting. They presented again a verbal request that the Manassa company be released as a stockholder. Still nobody was advised as to how the release could be effected and it was suggested that the Manassa company obtain the opinion of a competent attorney and present it to the next annual meeting which the representatives of that company agreed to do. Eighty-seven shares were represented including the forty-two and two-thirds shares of the Manassa company. An assessment of $4.00 a share was levied, the shares of the Manassa company being voted against it. Nothing further was done until the annual meeting of February 4, 1935. The minutes of this meeting disclose that a resolution was offered by V. H. Mann, duly seconded and unanimously carried, that the unpaid assessments on the stock held by the Manassa company then amounting to $938 be compromised for $600 if paid within 60 days from date.

The testimony of plaintiff's witnesses Brady, Jensen and Silvers, together with the minutes of the meetings of the Guadalupe company, clearly show that there was a dispute between the Manassa company and Guadalupe company as to the liability of the former to pay assessments on its stock after the change of point of diversion.

The testimony of these witnesses is clearly to the effect that at the 1935 annual meeting the whole matter of separation and assessments was discussed and that the representatives of the Manassa company first offered to settle the disputed assessments for $500 and later agreed that the company would pay $600 upon condition that it be released from all further obligation as a stockholder of the Guadalupe company. The resolution effecting the compromise settlement for $600 was carried unanimously. No witness, other than V. H. Mann, testified that it was not agreed that the amount was to be paid as a compromise and in consideration of such release and separation. On this point the trial court found as follows:

"The Manassa Company's officers testify that they offered a compromise or accord of the existing dispute at a figure first made of five hundred and then raised to six hundred dollars. The evidence shows the offer was discussed and that it included the conveyance by the Guadalupe company to the Manassa company of its share of the water in the Guadalupe priority in exchange for the surrender of the stock which the Manassa company held in the Guadalupe. The testimony further shows that V. H. Mann reduced to writing his conception of a resolution on the subject and handed it to the secretary after the meeting so that the secretary might write up his minutes to conform with Mann's manuscript. In this connection the testimony of the Manassa company's officers as to the terms of the offer they made and the resolution as presented to the meeting is clear upon the point that the composition offer included the conveyance and the surrender of the stock as well as a full satisfaction for all assessments claimed by the Guadalupe which matters, by reason of what had gone before, had become the subject of a dispute in good faith between the parties.

"All parties are agreed that in the resolution as written in Plaintiff's Exhibit 6 (Minutes of 1935 meeting) and in the resolution that was presented to the meeting, there was a provision that the $600 was to be paid 60

days thereafter. This leads to an inference, strongly reinforced, by the conduct of the parties in the many meetings of the Guadalupe company several years before, that this 60-day period was to allow for the technical work of separating the Manassa company's holdings from those of the Guadalupe.

"It appears from the evidence, and the court finds, that the understanding between the parties was that the $600 was to be in full settlement, not only of the Guadalupe's claim for assessments, but that the interest of the Manassa company was to be separated from the Guadalupe to avoid future controversies over subsequent claims of the same nature. The correspondence of the parties make manifest the true nature of the agreement."

The court's finding is on conflicting testimony and is supported by sufficient competent evidence. We are not at liberty to disturb it. If what was done, as found by the court, amounted in legal effect to a purchase by the Guadalupe company of its stock representing the water used by the Manassa company so that it was necessary to the validity of the transaction that it be authorized by a two-thirds vote of the stock, other than that being purchased, at an annual or special stockholders' meeting called for that purpose as provided by section 145, chapter 41, '35 C. S. A., this, to all intents and purposes, was done. The meeting at which the action was taken was an annual meeting. As heretofore stated the total number of shares of Guadalupe stock outstanding was one hundred. Forty-two and two-thirds shares were owned by the Manassa company. More than forty-eight and two-thirds shares of the remaining stock were represented in the meeting. The resolution authorizing the settlement for $600, which the court found was offered on condition that the Manassa company be permitted to withdraw from the Guadalupe company, and so accepted, was carried unanimously, and while a vote was cast representing all of the stock including that of the Manassa company, it received the approval of more than two-

thirds of the fifty-seven and one-third shares exclusive of those owned by the latter, and this is all that section 145, supra, requires.

Judgment affirmed.

MR. JUSTICE FRANCIS E. BOUCK, MR. JUSTICE BOCK and MR. JUSTICE BURKE not participating.